*27*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

WALTER ZEROD and
ELGIE ZEROD,

       Plaintiffs,

                     CIVIL ACTION
                     NO. 03-CV-10098-BC

v.

                     DISTRICT JUDGE DAVID M. LAWSON

CITY OF BAY CITY,               MAGISTRATE JUDGE CHARLES BINDER
DAN GARIGEN,
PATRICK LOCHINSKI,
RICHARD ROBERTS,
J. KORY, and
JOHN DOE,

       Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANTS'
## MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT
(Dkt. 15)

## I.    RECOMMENDATION

    **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** and the case be **DISMISSED**.

## II.    REPORT

### A. Introduction

    This matter is before the undersigned Magistrate Judge pursuant to an order of reference from U.S. District Judge David M. Lawson for general case management. (Dkt.

2.) Plaintiffs, who are husband and wife, are citizens of Bay City, Michigan, and on April 11, 2003, they filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Seeking declaratory and injunctive relief, Plaintiffs claim that a Bay City ordinance regulating the location of disabled motor vehicles is unconstitutional on its face and as it was applied to them. The case is currently before the Court on Defendants' above-entitled dispositive motion. Plaintiffs filed a response to the motion (Dkt. 16) and a transcript of a related state court hearing. (Dkt. 17.) Defendants filed a reply. (Dkt. 19.) Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this motion is ready for Report and Recommendation.

## B. Background

On February 8, 2003, Plaintiffs received a notice addressed to "occupants" from Bay City's complaint and nuisance officer, Defendant Dan Garigen. The notice was entitled "Remove, Repair and/or License a Motor Vehicle," and on it were listed three vehicles: "Brown Chevy Van, Gray/Black Car & Blue Thunderbird in Side Yard." (Compl., Dkt. 1 at 4.) Soon thereafter, two more notices arrived that were identical to the first except that they were addressed to Walter and Elgie Zerod, the Plaintiffs in this case.

Plaintiffs state that, on February 14, 2003, they responded "with an Offer of Performance and a request for a hearing, under the Administrative Procedure Act, as there was no provision for a hearing in the statute." (*Id.*) Apparently Plaintiffs also requested additional documentation, because on February 26, 2003, Neil P. Wackerly, City Attorney, responded to Plaintiffs via letter, wherein he explained the substance of the City ordinance regulating the storage of disabled motor vehicles, and further stated that "there is nothing

2

contained in state law or local ordinance which requires the city to provide the documentation set forth in your five demands." (Wackerly Ltr. of 2-26-03, Compl., Dkt. 1 at Ex. A.) Mr. Wackerly also attached copies of the relevant ordinance sections to the letter.[1]

On March 4, 2003, Bay City Police Officers Richard Roberts and Jennifer Kory, who are both named as defendants in this case, arrived at Plaintiffs' house and allegedly told Plaintiffs that they were there to tag the cars to identify them as the ones to be towed away. (Compl. at 5.) When the officers asked Plaintiffs for permission to approach the vehicles to obtain the vehicle identification numbers ("VINs") and affix the tags, however, Plaintiffs refused and asked the officers if they had a warrant. Defendants allegedly responded that they did not need one, and then proceeded to obtain the VINs and tag the vehicles. (*Id.*)

Two days later on March 6, four police officers arrived at Plaintiffs' home – Defendants Roberts and Kory, as well as Corporal Patrick Lochinski, also named as a Defendant, and Officer Mark Seward, named as Defendant John Doe. (*Id.* at 6.) Plaintiffs claim that after one officer donned what appeared to be a bullet-proof vest, all four approached Plaintiffs' home. Plaintiffs went out to the front porch and spoke with Defendants Roberts and Kory, who stated that they were not going to tow Plaintiffs' vehicles. Plaintiffs allege that Officer Roberts stated, "You wanted a hearing and we're here to give

---

[1] The ordinance referred to in this case is found in Article IX of the Bay City Code, entitled "Disabled Motor Vehicles." (Attach. to Compl., Dkt. 1 at Ex. A.) A disabled motor vehicle is defined as "any motor vehicle . . . which is incapable of being self-propelled or which does not meet the requirements for operation upon the public streets, including a current license." Bay City Code, Art. IX § 74-201. The ordinance further provides in pertinent part that "no owner and/or occupant of real estate shall permit a disabled motor vehicle to be stored or repaired in the side or rear yard . . . of any lot or land zoned residential or office for a period in excess of ten days and, in any event, no more than one vehicle shall be allowed to be so stored or repaired in any ten-day period." Art. IX § 74-203(a).

you a hearing." (*Id.* at 6.)  After some conversation, Defendant Officer Kory returned to her

vehicle where she filled out two citations[2] charging Plaintiffs with violations of Bay City

Code section 74-203.  One was issued to Plaintiff Walter Zerod and was for a brown/maroon

Chevrolet van, and the other was issued to Plaintiff Elgie Zerod for a 1978 gray/black Buick

Riviera.  After delivering the citations to Plaintiffs, the officers returned to their vehicles and

drove away.  (*Id.* at 7.)

On April 11, 2003, Plaintiffs filed the instant federal action alleging that Article IX

of Chapter 74 of the Bay City Code of Ordinances is unconstitutional on its face and as

applied to Plaintiffs, because it interferes with the right to own property, it prohibits innocent

conduct, and it "allows any police officer to trespass without a warrant for any reason." (*Id.*

at 8.)  Plaintiffs also claim that Defendants violated their Fourth Amendment rights when

they "arbitrarily invade[d] plaintiffs' posted property without their permission by trespassing

and searching without a warrant said vehicles to ascertain if any of the vehicles were disabled

prior to the written notice" and after the notices when they searched for the VINs and affixed

the tags.  (*Id.*)  Plaintiffs further allege that "the only purpose of defendants' actions were to

seek or detect evidence of ordinary wrongdoing, a clear violation of the Fifth Amendment

---

[2]The section of the Bay City Code that provides for the enforcement of Article IX states that
appearance citations shall be issued as follows:

> Any police officer or designated code enforcement officer who witnesses the existence of
> a violation of this article may enter upon the premises where the violation is observed and
> may detain a person temporarily for the purpose of making a record or check of the vehicle
> and also to prepare and subscribe, as soon as possible and as completely as possible, an
> appearance citation for violation of this article.

Bay City Code, Art. IX § 74-204(c).

guarantees against self-incrimination." (*Id.* at 9.) Although Plaintiffs' vehicles were not removed from the property, Plaintiffs claim that "Article IX of chapter 74 of the Bay City Code of Ordinances has no provision for removal of vehicles from private property and therefore said removal is unlawful." (*Id.*) Plaintiffs seek declaratory and injunctive relief, as well as any other relief deemed appropriate by the Court. (*Id.*)

On July 17, 2003, Plaintiffs' bench trial on the misdemeanor citations took place before the Honorable Timothy J. Kelly, Bay County District Judge. (*See* Transcript of Bench Trial, Dkt. 17.) At the commencement of the trial, the Zerods informed Judge Kelly that they objected to the proceeding because they were removing the case to federal court. (Tr. at 5.) After much discussion, Judge Kelly denied Plaintiffs' motion to adjourn the matter (*id.* at 8, 9, & 12), and also denied Plaintiffs' motion for leave to file an immediate interlocutory appeal with the Michigan Court of Appeals. (*Id.* at 15.) The bench trial therefore proceeded, with the prosecution presenting three witnesses and the Zerods presenting no witnesses in their defense. The Zerods were each found guilty of a misdemeanor code violation beyond a reasonable doubt. (*Id.* at 56.) In making its findings, the court stated that the undisputed evidence presented was that the vehicles were not able to be driven on the roadways and that neither vehicle had current license plates, with both plates having expired in 2001. (*Id.* at 55.) Plaintiffs were fined $50 each. (*Id.* at 57.)

5

## C.  Defendants' Motion for Dismissal and/or Summary Judgment

### 1.  Motion Standards

The title of Defendants' motion refers to both dismissal and summary judgment, however, because Defendants have attached several documents which are outside of the pleadings and which will be considered by the Court, the motion is properly treated as one for summary judgment.  *See* FED. R. CIV. P. 12(b)(6).

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, and will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In responding to a motion for summary judgment, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.

Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court may rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**2. Analysis & Conclusions**

**a. Constitutionality of Ordinance**

**i. Defendants' Arguments**

Defendants assert that Article IX of the Bay City Code ("the ordinance") is constitutional as a valid exercise of the City's police powers. Defendants point to the presumption of constitutionality which reviewing courts must afford to all legislative enactments, and contend that it has not been overcome in this case. With regard to Plaintiffs'

7

claim that the ordinance violates their rights under 42 U.S.C. § 1982[3] to purchase, hold, and sell personal property, the City responds that the ordinance merely restricts the locations where disabled vehicles may be stored; it does not prohibit anyone from purchasing, owning or selling such vehicles. (Br. in Supp. of Mot., Dkt. 15 at 4-5.) Citing *Fertilizing Co. v. Hyde Park*, 97 U.S. 659, 24 L. Ed. 1036 (1878), the City asserts that it was long ago established that ordinances which promote the stabilization of property values, the regulation of municipal development, the security of home life, and the preservation of a favorable environment in which to rear children are within the ambit of a municipality's police power.

### ii.  Governing Law

To prevail in an action under 42 U.S.C. § 1983 alleging the unconstitutionality of a municipal ordinance, a plaintiff must show that his due process or equal protection rights were violated, or that the ordinance is overbroad, ambiguous, or vague. When a court sits in review of a statute or ordinance, the general rule is that the legislation is presumed to be valid and should be sustained if a rational relationship exists between the terms of the ordinance and a legitimate governmental purpose. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439-40, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *Berger v. City of Mayfield Heights*, 154 F.3d 621, 624 (6th Cir. 1998) (finding that rational relationship test applies to claims that government action violates substantive due process rights or equal

---

[3]That statute provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

protection rights). However, when government actions affect fundamental rights or discriminate on the basis of a suspect classification, such as race, alienage or national origin, they are subject to strict scrutiny and will be sustained only if they are "suitably tailored to serve a compelling state interest." *Cleburne*, 473 U.S. at 440. Actions or statutes that classify by gender or illegitimacy are also subject to heightened scrutiny and will be sustained only if they are substantially related to a sufficiently important state interest. *Id*. at 440-41.

In *Fair Housing Advocates Ass'n, Inc. v. City of Richmond Heights, Ohio*, 209 F.3d 626 (6th Cir. 2000), Circuit Judge Alice Batchelder stated in her concurring opinion that

> we should begin by recognizing the traditional deference given to exercises of a locality's police power. This presumption of validity stems from a recognition that federal courts should be wary to tread on the spheres of authority that were never given up by state and local governments. . . . Health and safety concerns are at the very heart of local police powers, and our respect for ordinances controlling uses of land for these reasons extends far back into our jurisprudence. *See, e.g., Tower Realty v. City of Detroit*, 196 F.2d 710, 722 (6th Cir. 1952) (quoting *Fischer v. City of St. Louis*, 194 U.S. 361, 370, 24 S. Ct. 673, 48 L. Ed. 1018 (1904)) ("The power of the legislature to authorize its municipalities to regulate and suppress all such places . . . as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood . . ., is so clearly within the police power as to be no longer open to question").

*Id*. at 638.

With regard to claims of procedural due process violations, the Fourteenth Amendment's Due Process Clause has been construed to require that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002)

9

(quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct.
492, 126 L. Ed. 2d 490 (1993)).

### iii. Discussion

In their response, Plaintiffs contend that the Bay City ordinance fails the rational
relationship test. They assert that the ordinance "bears no real or substantial relationship to
public health, morals, safety or general welfare insofar as it concerns automobiles that are
merely inoperative or lacking current license plates." (Pls.' Resp., Dkt. 16 at 1.) In support
of this argument, Plaintiffs cite an unpublished 1982 case from the Michigan Court of
Appeals which held that an ordinance enacted by the City of Flint, Michigan, that related to
"dismantled" or "junked" vehicles was invalid under the Michigan Constitution. *See City
of Flint v. Hezekiah Samuel Bibbs*, No. 52759 (Mich. Ct. App. April 26, 1982) (unpublished
per curiam) (attached as Ex. A to Pls.' Resp., Dkt. 16). Citing only Michigan law, the court
in *Bibbs* held that

> plaintiff's ordinance bears no real or substantial relationship to public health,
> morals, safety or general welfare insofar as it concerns automobiles that merely
> are inoperative or lacking current license plates. Such automobiles pose no
> threat to public health or safety and because the challenged ordinance prohibits
> persons from permitting such vehicles to remain on their property for more
> than 15 days, it is unconstitutionally overbroad.

*Bibbs* at 3-4.

I suggest that the *Bibbs* case is not applicable here for several reasons. First, a
published state court case applying state law is not binding on a federal court presiding over
a federal action brought pursuant to 42 U.S.C. § 1983. Moreover, where, as here, the state
case is an *un*published per curiam opinion, I suggest that it is entitled to no weight. Second,

10

the *Bibbs* case cannot even be considered instructive to the instant action because the Michigan Court of Appeals did not quote the wording of the Flint ordinance in its opinion, and therefore it is impossible to glean from the opinion the precise language that the court found to be vague and overbroad. The state court simply stated that Bibbs was "charged under an ordinance of the plaintiff city with allowing a partially dismantled, operating, wrecked, junked or discarded vehicle to remain on his property for more than 15 days." *Bibbs* at 1. There is some indication that the Flint ordinance prohibited such vehicles from being located anywhere on a Flint resident's property for more than 15 days, based upon the court's note that defendant Bibbs orally moved to dismiss at the trial court level because he "had 'a right to put his cars in his driveway.'" *Id.* In light of this argument, one can infer that the Flint ordinance was found to be overbroad because it prohibited the presence of such vehicles anywhere on a Flint resident's property. If so, the *Bibbs* case is materially distinguishable from the instant case where the Bay City ordinance only prohibits vehicles which are unlicensed or incapable of self-propulsion from being stored in a side yard or rear yard of property zoned residential or office for more than 10 days. Bay City Code, Art. IX § 74-203(a).

The question remains, then, whether the Bay City ordinance is rationally related to a legitimate governmental interest. In *Davis v. Norman*, 555 F.2d 189 (8th Cir. 1977), the plaintiff sought to enjoin the enforcement of an abandoned, wrecked or inoperable motor vehicle ordinance enacted by the City of Pine Bluff, Arkansas. The ordinance in that case "prohibit[ed] the unenclosed storage of abandoned, wrecked, or inoperable motor vehicles

11

on public or private property for more than 15 days, and authoriz[ed] the police to remove such vehicles, if the owner fails to do so after 72 hours notice." *Id.* at 190. The ordinance had been enacted under the city's police powers for the purpose of preventing: the reduction of property values; plundering; fire hazards; hazards to the health and safety of children; urban blight; zoning violations; and health and sanitation hazards. *Id.* at 191 n.2. The plaintiff argued that the ordinance was unconstitutional and that he had a First Amendment right to keep his deceased son's wrecked truck in his front yard because it was a protest against the government abuse of authority that led to his son being killed in high speed chase with local police. *Id.* at 190.

The Eighth Circuit found that the ordinance not only met the test of being rationally related to a legitimate government interest, but the court applied a stricter test due to the argument that the ordinance infringed on the plaintiff's free speech rights, and found that it met that heightened test as well:

> The ordinance serves the basic purpose of protecting the community from the health and safety hazards created by abandoned, wrecked and inoperable vehicles. The effectuation of this objective by requiring enclosed storage is within the constitutional power of the city and furthers important and substantial government interests. Also the furtherance of these interests is unrelated to the suppression of free expression. Both the governmental interest and operation of the ordinance are limited to the noncommunicative aspect of Davis' conduct. *Cf. Buckley v. Valeo*, 424 U.S. 1, 15-17, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976). Finally, we perceive no less restrictive means to achieve the enunciated governmental interests than enclosed storage.

*Id.* at 191 (footnote omitted).

In this case, where no free speech rights are implicated and the ordinance need only be rationally related to legitimate governmental interests, I suggest that the Bay City

12

ordinance in question passes constitutional muster. The Defendant City asserts that it has

legitimate interests in maintaining the security of home life, preserving a favorable and safe

environment within which to raise children, stabilizing uses and value of property, as well

as an interest in the aesthetics of the municipality.[4] I suggest that Bay City Code § 74-203(a),

which prohibits the storage for more than 10 days of disabled vehicles in either front or side

yards of residential or office property, has essentially the same effect as the ordinance in

*Davis* – it requires disabled vehicles to be stored in enclosed areas only. As the Eighth

Circuit stated in *Davis*, this requirement clearly "protect[s] the community from the health

and safety hazards created by abandoned, wrecked and inoperable vehicles." *Davis*, 555 F.2d

at 191. Therefore, I suggest that the ordinance does not violate either equal protection or

substantive due process rights because it is rationally related to legitimate governmental

interests.

Plaintiffs also argue that the ordinance is unconstitutional because it is void for

vagueness. This claim was raised for the first time in their response to Defendants' motion.

(Br., Dkt. 16 at 1.) Quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S. Ct.

839, 31 L. Ed. 2d 110 (1972), Plaintiffs assert that the Bay City ordinance in question "fails

to give a person of ordinary intelligence fair notice that his contemplated conduct is

---

[4]Defendants acknowledge that police powers may not be exercised solely to advance aesthetic values, but maintain that aesthetic interests can be one factor among many, citing *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984) ("It is well settled that the state may legitimately exercise its police powers to advance esthetic values."). (Defs.' Br. in Supp., Dkt. 15 at 5.)

13

forbidden by the statute," and that "it encourages arbitrary and erratic arrests and convictions." *Papachristou,* 405 U.S. at 162 (citations omitted).

In their reply, Defendants assert that the Bay City ordinance is not vague because it gives a specific definition of a "disabled" motor vehicle as well as a clear statement that such a vehicle may not be stored for more than 10 days in a side or rear yard of a residential property. (Reply, Dkt. 19 at 3.) In support of their argument, Defendants cite the following passage from the United States Supreme Court:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (footnotes omitted). Defendants argue that the Bay City ordinance is not vague, as its terms are defined clearly enough to allow a person of ordinary intelligence to readily identify what conduct is prohibited.

I suggest that Defendants are correct. The ordinance explicitly defines "disabled motor vehicle" to mean "any motor vehicle, or parts thereof, whether assembled or not, which is incapable of being self-propelled or which does not meet the requirements for operation upon the public streets, including a current license." Bay City Code, Art. IX § 74-

14

201.  I suggest that this language leaves no doubt in the mind of a person of ordinary intelligence and provides fair warning that it is referring to vehicles that either won't run or can't legally be operated on the public streets.  Further, it does not include any subjective terms that would give officers or other governmental officials the discretion to apply it arbitrarily.

The ordinance likewise clearly explains, I suggest, the locations where such disabled vehicles are prohibited from being located and the applicable period of time:  "no owner and/or occupant of real estate shall permit a disabled motor vehicle to be stored or repaired in the side or rear yard . . . of any lot or land zoned residential or office for a period in excess of ten days and, in any event, no more than one vehicle shall be allowed to be so stored or repaired in any ten-day period."  Bay City Code, Art. IX § 74-203(a).  A person of ordinary intelligence, I suggest, would understand from this language that if they have a vehicle that breaks down and needs repair, it can be placed in a side or rear yard and worked on, so long as the vehicle only remains in that location for a maximum time of 10 days. I further suggest that a person could understand that if they decide to own an unlicensed vehicle, they are going to have to find a place to store it other than in their side yard or rear yard, such as in an enclosed garage.[5]  Thus, I suggest that this provision is not vague as it provides fair warning of what conduct is prohibited, and does not include subjective terms that could allow for discriminatory application.

---

[5]Although not the subject of this lawsuit, I note that Bay City Code § 74-202 prohibits the storage of disabled motor vehicles on public streets and in front yards.

15

Plaintiffs also claim that the ordinance is overbroad and therefore unconstitutional. (Pls.' Resp., Dkt. 16 at 1.) In response, Defendants quote the following passage from *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982): "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." *Id.* at 494 (footnotes omitted). The *Hoffman* court's statements regarding overbreadth are not applicable in the instant case, however, because the ordinance in question here is not being challenged on First Amendment grounds. *See U.S. v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987) ("we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment"). "[A] statute can be held facially unconstitutional even if the challenge is not raised under the First Amendment, but the test for facial unconstitutionality then is whether any set of circumstances exists under which the statute in question would be valid." *U.S. v. Rybicki*, 354 F.3d 124, 130-31 (2d Cir. 2003) (citing *Salerno*). Applying this test, I suggest that the ordinance in question is not unconstitutional on the basis of overbreadth because clearly a set of circumstances exists where the application of the ordinance would be valid.

Finally, Plaintiffs claim that the ordinance violates procedural due process rights because there is "NO opportunity to be heard other than in a court of law AFTER the car has been towed – 74-205(e) and (f)." (Compl. at 3 (emphasis in original).) I suggest that this claim has no merit because it is factually incorrect. Section 74-205 of the ordinance is

entitled "Removal of Vehicles." (*See* Ord., Attach. to Compl.)  While it is true that sub-sections (c) through (f) of section 74-205 refer to a "post-towing hearing," sub-sections (a) and (b) clearly set forth that towing is only to occur when (1) a motor vehicle is found "in the streets, alleys or highways of the city which is unlicensed or displays an improper registration plate," and (2) police officers have run the VIN through the Law Enforcement Information Network and found that no current registration plate has been issued for the vehicle.  In other words, only unregistered vehicles that have been abandoned in the public streets can be towed pursuant to this section of the ordinance.

The section of the ordinance that was applied to Plaintiffs that implicates their procedural due process right to a hearing is section 74-204(c), which provides that a police officer or code enforcement officer who witnesses a code violation is to prepare and serve an appearance citation.  Two of those citations were prepared in this case by Defendant Officer Kory, one in the name of Plaintiff Elgie Zerod and the other in the name of Plaintiff Walter Zerod. (*See* Compl. at 7, ¶¶ 30-31.)  Pursuant to these citations, Plaintiffs appeared in Bay County District Court before Judge Kelly, went through months of pre-trial process, and eventually were convicted following a bench trial at which they had the full opportunity to cross examine witnesses for the prosecution, present evidence, and testify on their own behalf. (*See* Tr. of Bench Trial, Dkt. 17.)  There is no dispute that all of this occurred prior to any deprivation of property, as Plaintiffs to date have not asserted that any of their vehicles have ever been towed.  Thus, I suggest that Plaintiffs' procedural due process arguments fail.

17

### iv.  Conclusion

Accordingly, I suggest that Defendants are entitled to summary judgment on Plaintiffs' claim that Article IX of Chapter 74 of the Bay City Code is unconstitutional, because, even viewing all facts and inference in the light most favorable to Plaintiffs, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### b.  Fourth Amendment Claims

Plaintiffs claim that Defendants violated their Fourth Amendment rights when they "arbitrarily invade[d] plaintiffs' posted property without their permission by trespassing and searching without a warrant said vehicles to ascertain if any of the vehicles were disabled prior to the written notice" and also when they entered upon the property without Plaintiffs' consent on March 4, 2003, and "searched" the vehicles to obtain the VINs. (Compl. at 8.)

In their response to Defendants' motion, Plaintiffs also assert that section 74-204(c) of the ordinance is in violation of the Fourth Amendment because it allows an officer to trespass upon private property, detain a person, search a vehicle, and obtain evidence for use in a criminal charge, all without a warrant or consent. (Resp. Br., Dkt. 16 at 2.)

### i.  Defendants' Arguments

Defendants contend that Plaintiffs cannot possibly show that their Fourth Amendment rights were violated because the vehicles at issue were not even located on Plaintiff's property, but on an empty lot next to Plaintiffs' residence which is owned by the City. Defendants have attached to their motion an affidavit from Patti Stowell, the Economic

18

Development Marketing Manager for the City of Bay City. (Stowell Aff., Dkt. 15 at Ex. A.) Stowell avers that, while the Zerod property is located at 2101 S. Jefferson Street, the vehicles were actually being stored on the vacant lot at 2103 S. Jefferson, which is adjacent to the Zerod property and was quit-claimed to the City by the Michigan Department of Natural Resources, Real Estate Division, on August 5, 1998. A copy of the Quit Claim Public Use Deed is also attached. Defendants therefore assert that Plaintiffs' Fourth Amendment claim necessarily fails because Plaintiffs could not have had an expectation of privacy in a vacant lot that they didn't even own. (Defs.' Br. in Supp., Dkt. 15 at 5-6.)

Defendants further assert that, even if Plaintiffs owned the vacant lot, their Fourth Amendment rights were not violated because the vehicles were left out in a open area, not within the curtilage of Plaintiffs' residence, where they were in plain view to everyone who passed by on the street. In fact, that is how the code violations were first discovered – Defendant Officer Roberts was patrolling the area in his capacity as the community enforcement officer when he noticed that one vehicle was "sitting in ruts and appeared that it had sat long enough that the vehicle had sunk into the ground," and that a "second vehicle appeared to be in such disrepair that it wasn't capable of running on city streets." (*Id.* at 6.) He therefore informed Defendant Garigen, the City's complaint and nuisance officer, of the situation and asked him to send out the initial notices that were addressed to "occupant."

Citing *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), and *Oliver v. United States*, 466 U.S. 170, 179, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984), Defendants contend that both the open view doctrine and the open fields doctrine

19

provide that what a person knowingly exposes to the public is not protected by the Fourth Amendment because any expectation of privacy therein would not be recognized by society as being reasonable. Furthermore, regarding the alleged "search" to obtain the VINs, Defendants point out that the U.S. Supreme Court has held that a VIN "is by law present in one of two locations – either inside the door jam, or atop the dashboard and thus ordinarily in plain view of someone outside of the automobile. Neither of those locations is subject to a reasonable expectation of privacy." *New York v. Class*, 457 U.S. 106, 118, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1986). Accordingly, Defendants assert that they are entitled to summary judgment on Plaintiffs' Fourth Amendment claims.

### ii. Governing Law

The Fourth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The "touchstone" of Fourth Amendment analysis is the question of whether a person has a "'constitutionally protected reasonable expectation of privacy.'" *Oliver v. U.S.*, 466 U.S. 170, 177, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). "The Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s]

that society is prepared to recognize as reasonable.'" *Oliver*, 466 U.S. at 177 (quoting *Katz*, 389 U.S. at 361).

The Supreme Court has acknowledged that the "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Ct. of San Francisco*, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). The Amendment does not only apply to law enforcement officials investigating criminal acts. "The officials may [also] be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment." *Michigan v. Tyler*, 436 U.S. 499, 504-05, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). Accordingly, absent consent or exigent circumstances, government officials must have a warrant to enter onto private property to locate or abate a nuisance where such entry would invade a constitutionally-protected privacy interest.

### iii. Discussion

Plaintiffs do not refute Defendants' contention that Plaintiffs are not the legal owners of the vacant lot adjacent to their residential property where the vehicles in question were located. Instead, they assert that "[t]he belief by all defendants at all times relevant hereto was that plaintiffs owned and occupied the residence and side yard. Plaintiffs therefore had an expectation of property." (Resp., Dkt. 16, Br. at 5.) Accordingly, Plaintiffs maintain that

21

when the officers entered upon the adjacent property and obtained the VINs, "their intent was to seize the vehicles without a warrant in clear violation of the Fourth Amendment." *Id.*

As an initial matter, I suggest that the officers' subjective beliefs as to the ownership of the property as well as their subjective "intent" are irrelevant to the question at hand, which is whether Plaintiffs had a legitimate expectation of privacy in the adjacent property on which the vehicles were located. The law is clear that "the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment." *Bond v. U.S.*, 529 U.S. 334, 339 n.2, 120 S. Ct. 1462, 146 L. Ed. 2d 365 (2000) (citing *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ("we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers")).

As stated, whether Plaintiffs' Fourth Amendment rights were violated depends upon whether they had an expectation of privacy in the adjacent property where the vehicles were stored that society is willing to accept as reasonable. If the property in question was a fenced-in yard immediately accessible from their residence, the answer would be yes. *See United States v. Jenkins*, 124 F.3d 768, 772 (6th Cir. 1997) (fenced-in backyard which is in close proximity to the owner's personal residence is within the "curtilage" of the home and is protected by the Fourth Amendment); *Conner v. City of Santa Ana*, 897 F.2d 1487, 1492 (9th Cir. 1990) (officers' conduct violated Fourth Amendment when, without the property owner's consent or a warrant, they broke down their fence, entered the back yard of their

22

residential property, and seized their vehicles which had been found to be in violation of the city's nuisance ordinance).

In this case, however, the property is a vacant lot owned by the City of Bay City that happens to be adjacent to Plaintiffs' residential property, and although Plaintiffs allege that certain sides of the property are fenced (Dkt. 16 at 5), there is nothing in the record to indicate that a fence encloses both Plaintiffs' property and the adjacent lot so that the officers would have had to scale a fence or open a gate to gain access to the vehicles. I suggest that this case is more like the Ninth Circuit case of *Schneider v. County of San Diego*, 28 F.3d 89 (9th Cir. 1994), where that court found that a property owner had no legitimate expectation of privacy in a field adjacent to residential property he owned, and therefore the county's warrantless seizure of vehicles pursuant to its nuisance ordinance was not in violation of the Fourth Amendment.

Although I note that *Schneider* is not entirely analogous because in that case the plaintiff was renting out his residential property and did not live there himself, I nevertheless suggest that Plaintiffs in this case have not asserted an expectation of privacy which society is prepared to recognize as reasonable. I suggest that society would find it unreasonable for a property owner to store his or her unlicensed vehicles for an extended period of time on a parcel of property which is owned by the City of Bay City, and then charge Bay City's own police officers with trespass and Fourth Amendment violations for walking onto that property, not to seize the vehicles, but merely to obtain the VINs for purposes of enforcing a Bay City nuisance ordinance. Although ownership is not synonymous with a right to

privacy, the Supreme Court has noted that "[o]ne of the main rights attaching to property is the right to exclude others, . . . one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." *Rakas v. Illinois*, 439 U.S. 128, 144 n.12, 99 S. Ct. 435, 58 L. Ed. 2d 387 (1978). Here, where Plaintiffs were not in lawful possession or control of the property, I suggest that they had neither a right to privacy on the land nor the right to exclude the agents of the rightful owner from the property. *See Oliver, supra*, 466 U.S. at 184 ("unlicensed use of property by others is presumptively unjustified"); *United States v. Dodds*, 946 F.2d 726 (10th Cir. 1991) (finding no legitimate expectation of privacy in a vacant apartment into which the defendant had fled, even though the defendant asserted that he sometimes slept in the vacant apartment). Moreover, I suggest that Plaintiffs' act of placing "No Trespassing" signs on property that does not belong to them did not give rise to an expectation of privacy. *See Oliver*, 466 U.S. at 182-84 (placement of "No Trespassing" signs on secluded property did not create "legitimate privacy interest" in marijuana fields).

I further suggest that the ordinance is not facially in violation of the Fourth Amendment. Although it states that an "officer or designated code enforcement officer who witnesses the existence of a violation of this article may enter upon the premises where the violation is observed . . .," § 74-204(c), it is silent as to a warrant requirement. It therefore must be presumed that it will be carried out in accordance with the constraints of the Fourth Amendment. In other words, the Court must presume that city officials are aware that they

24

must obtain a warrant before entering into an area where a legitimate expectation of privacy exists, such as a fenced-in yard of a residential home.

### iv. Conclusion

Because Plaintiffs did not possess a legitimate expectation of privacy in the property on which the officers entered that society would find reasonable, I suggest that Defendants are entitled to summary judgment on Plaintiffs' Fourth Amendment claims.

### c. Ninth Amendment Claim

Plaintiffs also assert in their response to Defendants' motion that they have a right under the Ninth Amendment[6] to park their automobiles anywhere they choose, for as long as they choose, and to own "any automobile in any condition, running or not running, plated or not plated as long as it does not affect the public health, morals, safety or general welfare and is not used as a conveyance upon the highways." (Pls.' Resp., Dkt. 16 at 3.)

Plaintiffs did not specifically assert a Ninth Amendment claim in their complaint. Nevertheless, to the extent that the claim is properly before the Court in light of Plaintiffs' *pro se* status, I suggest that Defendants are entitled to summary judgment because "the ninth amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986).

---

[6]The Ninth Amendment provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX.

25

### d. Fifth Amendment Claim

Plaintiffs' complaint states that "the only purpose of defendants' actions were to seek or detect evidence of ordinary wrongdoing, a clear violation of the 5th Amendment guarantees against self-incrimination." (Compl. at 9.) To the extent that Plaintiffs have thus raised a Fifth Amendment claim, I suggest that Defendants are entitled to summary judgment because the Fifth Amendment privilege against self-incrimination does not apply under these circumstances.

The Fifth Amendment states: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. AMEND. V. The law has long been settled that the protections of the Fifth Amendment only apply to incriminating evidence of a *testimonial* or *communicative* nature. *See Schmerber v. California*, 384 U.S. 757, 760-61, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). *See also Ullmann v. United States*, 350 U.S. 422, 430-31 (1956) (Fifth Amendment protection against self-incrimination only applies to *testimony* which may expose witness to criminal charges). Here, there was no evidence of a testimonial or communicative nature involved, and therefore the Fifth Amendment privilege was not implicated.

### e. State Law Claims

Plaintiffs' complaint cites Article I Section 17 of the Michigan Constitution. (Compl. at 3.) However, because I have suggested that Defendants are entitled to summary judgment on the federal claims, I further suggest that the Court not exercise its discretion to entertain any arguably pendent state claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726,

26

86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.")


## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).   Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED:   March 29, 2004


Copies to:   Walter and Elgie Zerod, 2101 S. Jefferson, Bay City, MI 48708
Neil P. Wackerly, Allsopp, Kolka & Wackerly, 509 E. Midland Street, Bay City, MI 48706
Honorable David M. Lawson, United States District Judge